UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 16-1473 (ESH) |
| DYNCORP INTERNATIONAL LLC, | ) ) ) | |
| Defendant. | ) ) | |

# MEMORANDUM OPINION

The United States has sued DynCorp International, a government contractor, asserting violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and common law causes of action for unjust enrichment, payment by mistake and breach of contract. The claims arise out of DynCorp's alleged overcharging for services provided to the government. DynCorp's answer asserted several affirmative defenses, four of which the government has now moved to strike. For the reasons explained below, the Court will grant the motion to strike in part and deny it in part.

## BACKGROUND

The facts of this case are available in this Court's Memorandum Opinion, *United States v. DynCorp Int'l, LLC*, No. 16-1473, 2017 WL 2222911 (D.D.C. 2017), granting DynCorp's motion to dismiss in part and denying it in part. In brief, DynCorp provided lodging, security, transportation and other services to support the Iraqi civilian force through a contract awarded by the United States Department of State ("DOS"). (Compl. ¶¶ 32–37.) DynCorp subcontracted some services through Corporate Bank Financial Services, Inc. ("Corporate Bank") even though, the government asserts, "DynCorp knew that the rates provided by

Corporate Bank . . . were unreasonable." (*Id.* ¶ 4.) The government alleges that "DynCorp knowingly made material false statements and key omissions about unreasonable labor rates that distorted its negotiations with the State Department." (*Id.* ¶ 64.) Further, the government claims that "[b]y misrepresenting and omitting information reflecting the true nature and bases of Corporate Bank's rates, DynCorp skewed price negotiations with the State Department and caused the State Department to agree to higher contract prices than it otherwise would have." (*Id.* ¶ 6.)

DynCorp moved to dismiss the government's claims. (Def.'s Mot. Dismiss, ECF No. 10.) The Court concluded that for both the FCA presentment claim and false statement claim, the government had adequately pled falsity, materiality, and scienter under an implied certification theory for the cost-reimbursable charges and a fraudulent inducement theory for the fixed-price charges. *DynCorp Int'l*, 2017 WL 2222911, at *3. The Court dismissed claims for unjust enrichment and payment by mistake to the extent they were based on cost-reimbursable charges. *Id.*

DynCorp subsequently filed its answer, (ECF No. 27), which included twelve affirmative defenses. In response, the government took the unusual step of moving to strike four of these defenses, arguing that they "are legally invalid or improperly pled." (Mot. Strike at 1, ECF No. 31.) Two of the four defenses—the fifth and the sixth—relate to an audit conducted by the Defense Contract Audit Agency ("DCAA") and DynCorp's settlement with DOS. DynCorp argues that if the government found the contract prices reasonable, it cannot now be allowed to revisit that determination. (*See* Answer at 29–31.) The seventh defense raises the applicable statute of limitations under 31 U.S.C. § 3735(b)(1). The ninth defense asserts that the government breached its contract with DynCorp before DynCorp allegedly violated the FCA and that the government engaged in inequitable conduct, thus precluding this suit. (*Id.* at 31–32.)

2

**ANALYSIS**

As to DynCorp's affirmative defenses of waiver and equitable estoppel (fifth defense), accord and satisfaction (sixth defense), laches as asserted against liability (seventh defense) and inequitable conduct (ninth defense), the Court grants the motion to strike because these defenses are precluded as a matter of law. This determination, however, does not speak to the potential evidentiary relevance of the DCAA audit or DOS's settlement with DynCorp. The Court declines to strike the statute of limitations defense, the laches defense insofar as it pertains to prejudgment interest (seventh defense) and the breach of contract defense (ninth defense). As to each defense, the Court's decision applies to both the FCA and the common law claims.

**STANDARD OF REVIEW**

Although "a motion to strike is a drastic remedy that courts disfavor," *United States ex rel. Landis v. Tailwind Sports Corp.*, 308 F.R.D. 1, 4 (D.D.C. 2015), Federal Rule of Civil Procedure 12(f) permits courts to "strike insufficient defenses or 'any redundant, immaterial, impertinent, or scandalous matter.'" *Landis*, 308 F.R.D. at 4 (quoting Fed. R. Civ. P. 12(f)). Whether to do so "is vested in the trial judge's sound discretion." *Id.* (quoting *Gates v. District of Columbia*, 825 F. Supp. 2d 168, 169 (D.D.C. 2011)).

A motion to strike may prove useful "when the parties disagree only on the legal implications to be drawn from uncontroverted facts." 5C Charles Alan Wright, Arthur R. Miller, *Federal Practice & Procedure* § 1381 (3d ed. 2011). But, a motion to strike should only be granted "if the insufficiency of the defense is [] clearly apparent." *Id.* And even when the defense presents "a purely legal question, federal courts are very reluctant to determine disputed

or substantial issues of law on a motion to strike." *Id.*; *see also, e.g., Reis Robotics USA, Inc. v. Concept Indust., Inc.*, 426 F. Supp. 2d 897, 905 (N.D. Ill. 2006) ("Before granting a motion to strike an affirmative defense, the Court must be convinced that there are no unresolved questions of fact, that any questions of law are clear, and that under no set of circumstances could the defense succeed.").

I.  **Waiver, Estoppel, and Accord and Satisfaction (Fifth and Sixth Defenses)**

The government has moved to strike DynCorp's fifth and sixth defenses, which assert that the United States "waived, and is estopped from asserting, any claim that [DynCorp]'s charges for Corporate Bank's services or facilities were unreasonable or in any way improper" (Answer at 29), and that the government's claims "are barred by an accord and satisfaction, and release" as a result of the DCAA audit and the settlement with DOS. (Answer at 30–31.) This Court will grant the government's motion as to these two defenses, but this is not to be construed as a ruling that the issue of the reasonableness of the charges is not relevant.

Although "the fundamental principle of equitable estoppel applies to government agencies, as well as private parties," the standard for estopping the government is "an exacting one." *United States v. Honeywell Int'l, Inc.*, 841 F. Supp. 2d 112, 114 (D.D.C. 2012). "To apply equitable estoppel against the government, a party must show that (1) 'there was a "definite" representation to the party claiming estoppel,' (2) the party 'relied on its adversary's conduct in such a manner as to change his position for the worse,' (3) the party's 'reliance was reasonable' and (4) the government 'engaged in affirmative misconduct.'" *Morris Commc'ns, Inc. v. FCC*, 566 F.3d 184, 191 (D.C. Cir. 2009). At bottom, "even if equitable estoppel does apply to the [g]overnment, any such application 'must be rigid and sparing' and . . . the case for estoppel 'must be compelling.'" *United States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 70 (D.D.C.

4

2004) (quoting *Office of Pers. v. Richmond*, 496 U.S. 414, 422 (1990)).

Even assuming DynCorp has successfully alleged the first three elements of equitable estoppel, what it claims as affirmative misconduct on the government's part, such as failing to provide sufficient "time for [DynCorp] to respond to task orders," (Opp'n Mot. Strike at 9–10), does not rise to the level of a "misrepresentation or concealment" or even behavior that could "cause an egregiously unfair result." *Gen. Accounting Office v. Gen. Accounting Office Pers. Appeals Bd.*, 698 F.2d 516, 526 (D.C. Cir. 1983); (*see* Opp'n Mot. Strike, ECF No. 33, at 9–10.) Therefore, the Court grants the motions to strike the affirmative defense of estoppel.

To establish waiver, the moving party must show that the government "intentional[ly] relinquish[ed] or abandon[ed] a known right." *Honeywell*, 841 F. Supp. 2d at 115 (quoting *United States v. Weathers*, 186 F.3d 948, 955 (D.C. Cir. 1999)). And waiver can only "be made by one having the authority to do so." *Id.* Under the FCA, the Attorney General holds this power. 31 U.S.C. § 3730(a).[1]

Similarly, contracting officers cannot release contractors from claims under the FCA, nor can they settle, compromise, pay, or adjust "any claim involving fraud." 48 C.F.R. § 33.210; *see also United States ex rel. Howard v. Lockheed Martin Corp.*, 14 F. Supp. 3d 982, 1030–31 (S.D. Ohio 2014). Only the Attorney General can settle FCA claims. 31 U.S.C. § 3730(b).[2] While the

---

[1] Other courts have come to different conclusions about whether to strike a waiver defense under similar circumstances, but these cases do not bind this Court. *See Landis*, 308 F.R.D. at 5 (denying a motion to strike an affirmative defense of waiver in an FCA case in light of the high standard for striking and the early litigation stage); *United States ex rel. Jordan v. Northrop Grumman Corp.*, No. 95–2985, 2002 WL 35454612, at *7–8 (C.D. Cal. Aug. 5, 2002) (denying a motion to strike in a similar case because ratification and waiver might show "whether a defendant possessed the requisite scienter to violate the FCA"). The Court agrees with the suggestion that if the government has knowledge, it may "negate[] a defendant's wrongful intent," *Jordan*, 2002 WL 35454612, at *8, but in that event, the issue is not waiver, rather, the issue is the defendant's scienter.

[2] Only a few other cases discuss an accord and satisfaction defense in a context like this one.

5

audit and settlement may well be relevant to deciding whether Corporate Bank's charges were significantly higher than reasonable, DynCorp cannot successfully allege that the government waived its FCA and fraud claims without showing that DOJ had the unmistakable intent to waive. But DynCorp has not alleged that the Attorney General was aware of or participated in the DCAA audit or DOS's alleged settlement, which DynCorp argues are relevant to determining Accordingly, the Court strikes DynCorp's fifth and sixth affirmative defenses asserting equitable estoppel, waiver and accord and satisfaction.

## II. Statute of Limitations and Laches (Seventh Defense)

In its seventh affirmative defense, DynCorp asserts that the state of limitations, 31 U.S.C. § 3731(b)(1), (2), and the doctrine of laches bar some of the government's claims. (Answer at 31.) The Court denies the motion to strike these defenses in part and grants it in part.

The Court accepts the government's representation that it "intends to pursue only the amount it overpaid for DynCorp's falsely or fraudulently inflated claims from January 29, 2005, through the present." it will only seek damages for its claims to charges that DynCorp submitted after January 29, 2005. (*See* Reply Mot. Strike at 8, ECF No. 35.) Nonetheless, DynCorp has adequately alleged that tolling agreements may apply. As such, factual disputes will dictate

---

*See, e.g.*, *Howard*, 14 F. Supp. 3d at 1031 (granting summary judgment eliminating an accord and satisfaction defense because "only the Attorney General is authorized to settle FCA claims"); *United States ex rel. Mayman v. Martin Marietta Corp.*, 894 F. Supp. 218 (D. Md. 1995) (denying a motion to dismiss based on alleged accord and satisfaction because "the Government's contracting officer for this contract had no authority to settle fraud claims"); *contra United States v. Hughes Aircraft Co.*, No. 89–6842, 1991 WL 11693422, *3 (C.D. Cal. Jan .17, 1991) (denying motion for summary judgment as to an accord and satisfaction defense based on the view that the defendant "should be permitted . . . to introduce evidence regarding its alleged accord and satisfaction with the contracting officer"); *United States v. Ctr. for Diagnostic Imaging, Inc.*, No. 05–0058, 2011 WL 6300174 (W.D. Wa. Dec.16, 2011) (denying, without analysis, a motion to strike an accord and satisfaction defense).

Here, the Court has elected to strike those defenses that fail as a matter of law because—while the audit and settlement may ultimately be relevant as an evidentiary matter—no facts except for the Attorney General's direct involvement would change the viability of these defenses.

6

whether DynCorp can make use of this defense. The government has therefore not met the high standard for striking this defense.

Laches applies "where there is (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Manin v. Nat'l Transp. Safety Bd.*, 627 F.3d 1239, 1241 (D.C. Cir. 2011). It has long been "settled that the United States is not . . . subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940); *see also United States ex rel. Purcell v. MWI Corp.*, 254 F. Supp. 2d 69, 74 n.2 (D.D.C. 2003) ("This circuit has adopted the *Summerlin* rule."). In particular, "laches and unclean hands are both unavailable as a matter of law when, as here, the [g]overnment acts in the public interest." *Philip Morris Inc.*, 300 F. Supp. 2d at 66 (citing *Ill. Cent. R.R. v. Rogers*, 253 F.2d 349, 353 (D.C. Cir. 1958)). To the extent that out-of-circuit authority suggests that laches might apply against the government in exceptional circumstances, Dyncorp not has pleaded any such circumstances here. *See, e.g., Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 278–79 (2d Cir. 2005) (listing three "main possibilities for when laches might apply against the United States" to include egregious laches, situations where there is no statute of limitations, and situations where the government sues on behalf of private parties or in pursuit of private rights) (citing *United States v. Admin. Enterprises, Inc.*, 46 F.3d 670, 672–73 (7th Cir. 1995)). Even so, the Supreme Court has acknowledged that laches might, under some circumstances, "bar an otherwise valid claim for interest." *West Virginia v. United States*, 479 U.S. 305, 311 n.3 (1987).

Given the early stage of proceedings and the fact that laches as a defense against prejudgment interest is not precluded as a matter of law, the Court grants the motion to strike DynCorp's seventh defense only insofar as it asserts laches to protect DynCorp from liability.

Accordingly, DynCorp may continue to assert its laches defense as it relates to prejudgment interest.

### III. Breach of Contract and Inequitable Conduct (Ninth Defense)

The government moves to strike what it characterizes as DynCorp's unclean hands defense. (Mot. at 8.) This refers to DynCorp's argument that the government's "claims are barred by the [g]overnment's prior breach of contract and inequitable conduct." (Answer at 31.) Specifically, DynCorp alleges DOS "ignored contractual formalities . . . caused confusion . . . provided insufficient time for [DynCorp] to respond to task orders," and required performance "at risk, without adequate assurance that [DynCorp] would be properly compensated." *Id.* at 31–32.

The unclean hands doctrine "may not be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest." *SEC v. Gulf & W. Indust., Inc.*, 502 F. Supp. 343, 348 (D.D.C. 1980); *see also Pan Am. Petrol. & Transp. Co. v. United States*, 273 U.S. 456, 506 (1927) ("[G]eneral principles of equity will not be applied to frustrate the purpose of its laws or to thwart public policy."). DynCorp therefore cannot sustain an affirmative defense asserting the government engaged in inequitable conduct.

The doctrine of prior material breach provides that "a party may defend against a breach of contract claim on the ground that its performance was excused by the other party's prior breach of the contract." *United States v. Kellogg Brown & Root Servs., Inc.*, 856 F. Supp. 2d 176, 185 (D.D.C. 2012). "The standard of materiality for the purposes of deciding whether a contract was breached 'is necessarily imprecise and flexible.'" *Stone Forest Indust., Inc. v.*

*United States*, 973 F.2d 1548, 1550–51 (Fed. Cir. 1992) (quoting *Restatement (Second) of Contracts* § 241 cmt. A (1981)).  Making this determination "depends on the nature and effect of the violation in light of how the particular contract was viewed, bargained for, entered into, and performed by the parties."  *Id.* at 1551.

Although DynCorp's pleading is far from convincing, its failure to cite other "cases where a prior material breach of contract was found to be a defense to claims under the FCA" (Reply Mot. at 10), does not mean that the Court should strike this defense at this early stage.  Thus, the Court denies the government's motion to strike the prior breach of contract defense, but it grants the motion to strike the inequitable conduct or unclean hands defense.

## CONCLUSION

The government's motion to strike is granted in part and denied in part.  The motion is granted as to the fifth and sixth defenses, and granted in part as to the seventh and ninth defenses and it is denied as to laches if asserted as to prejudgment interest (seventh defense) and the breach of contract defense (ninth defense).

/s/ *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date: October 4, 2017

9