IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DYNCORP INTERNATIONAL LLC, ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. 16-cv-1473 (ESH-RMM) |

## JOINT STATUS REPORT

Pursuant to the August 20, 2018 Minute Order of Magistrate Judge Meriweather, the United States of America ("United States") and DynCorp International LLC ("DI") hereby submit the following joint status report regarding their ongoing efforts to narrow the scope of the discovery dispute that is at issue in the pending Motion to Compel.

## Procedural History

DI filed its Motion to Compel on July 6, 2018 (Dkt. No. 59), and the United States filed its response on August 6, 2018 (Dkt. No. 60). On August 17, 2018, DI moved for an extension of time to file its reply until after the United States completes its anticipated productions, on the basis that the Government's forthcoming productions will likely reduce the number and complexity of the issues the Court will need to decide and thus promote judicial economy (Dkt. No. 61). The Government opposed this Motion (Dkt. No. 62). The Magistrate Judge granted-in-part DI's request on August 20, 2018, ordering that DI's reply shall be due two weeks after the date that the United States completes its productions. In an effort to further address discovery issues pending the completion of the Government's productions, the parties have corresponded about various discovery matters (and conferred regarding those matters on September 6, 2018).

**Summary of Discussions/DI's Position**

DI's Motion to Compel requested that the United States be ordered to produce or make available eight categories of items.[1] In its Response to DI's Motion, the United States agreed to produce or make available many of the items, though DI was unable to fully assess whether the United States' forthcoming productions would adequately address DI's requests in several of these areas.

With regard to each of the eight categories:

1. The parties recently conferred regarding the exchange of search terms, but have been unable to reach an agreement;

2. The parties recently conferred about the United States' forthcoming production of State Department ESI and DI will review the forthcoming production(s) to assess their adequacy;

3. The United States has made available for DI's inspection all but (3) three of the boxes of hard copy files that it located and expects to make the remaining boxes available for DI's inspection soon;

---

[1] The categories are: (1) a list of the custodians from whom the United States collected Electronically Stored Information ("ESI") and the search terms it used, or intends to use, to produce responsive documents; (2) responsive State Department ESI by a date certain; (3) approximately 50 boxes of hard copy State Department documents by a date certain; (4) documents pertaining to Blackwater Security Consulting, LLC's Worldwide Personal Protective Services contract; (5) documents pertaining to seven non-State Department contracts; (6) an unissued Defense Contract Audit Agency ("DCAA") report and all associated work papers; (7) work papers for previously-produced DCAA audit reports; and (8) an additional 36 DCAA audit reports.

4. The parties recently conferred about the United States' forthcoming production of Blackwater documents and DI will review the forthcoming production(s) to assess their adequacy;

5. The parties recently conferred about the United States' forthcoming production of documents pertaining to one of the seven contracts at issue in DI's Motion (the LOGCAP contract), and DI will review the Government's forthcoming production(s) for this contract, as well as the other contracts, to assess their adequacy; and,

6. The parties recently conferred about the United States' production of DCAA-related documents, which has been transmitted to DI and which the United States believes will address all of the issues DI raised in its Motion; DI will review this production to assess its adequacy.

In addition, though not part of DI's Motion (because the parties have not exchanged privilege logs, and until recently had not conferred regarding any of the Government's apparent privilege assertions), the Government asserts deliberative process privilege over several redacted Department of State documents that DI believes should be produced.[2] The parties have reached an impasse regarding this matter.

In sum, though the parties have made progress in several areas pending the Government's completion of its productions, there are currently two issues about which the parties have reached an impasse: (1) the exchange of search terms used for the parties' production of ESI and (2) the Government's assertion of the deliberative process privilege over several Department of

---

[2] As the parties have not yet exchanged privilege logs, other issues and disputes regarding the assertion of privilege claims may arise in the future.

State documents. DI will await the Government's productions to assess the remaining issues in its Motion to Compel. DI does not agree with certain positions set forth by the United States below, but will continue to try to resolve these issues before filing its reply in support of the Motion to Compel.

**Summary of Discussions/United States' Position**

Regarding DynCorp's summary of the Motion to Compel issues, the United States adds the following clarifications, and more fully addresses these issues below. First, in regard to the hard copy State Department records (DynCorp's item 3, above), the United States is searching for three additional boxes and will make them available if they can be located. Second, in regard to DynCorp's statement that "the Government asserts deliberative process privilege over several redacted Department of State Documents that DI believes should be produced," the United States clarifies that it <u>intends</u> to assert deliberative process privilege if authorized, and that the documents in question also contain portions over which the United States intends to assert attorney-client privilege.

**I.     EXCHANGE OF SEARCH TERMS**

*DI's Position:*

DI requested in its Motion to Compel that, pursuant to the parties' E-Discovery Framework, the Government provide DI with a list of the custodians from whom the United States has collected ESI and the search terms the United States has used, or intends to use, to produce responsive documents.[3] In its response, the United States agreed to exchange this

---

[3] The parties' E-Discovery Framework provides: "The parties will negotiate in good faith to identify and, to the greatest extent practicable, limit the number of custodians from whom ESI will be collected. . . . The parties will negotiate in good faith to identify and, to the greatest extent practicable, organize a reasonable set of search terms that avoids undue discovery burden when applied to each party's custodial documents."

4

information (but now will not honor that agreement).[4]  Therefore, it appears that the parties are unable to agree on this matter and that the exchange of search terms will, therefore, remain a subject of DI's reply in support of its Motion to Compel.  DI maintains that exchanging search terms is essential to determining whether the United States' ESI productions are adequate because the search terms reveal critical information about the scope of those productions.[5]

***The United States' Position:***

The E-Discovery Framework (Att. 1) upon which DynCorp's motion to compel relies was not finalized until October 16, 2017, when the United States was nearly two months into responding to DynCorp's document requests.  The E-Discovery Framework's anticipated negotiation over search terms was not raised again until late June, 2018, when DynCorp requested the United States' list of search terms in order to "assess any potential gaps in the [United States'] production of responsive documents in custodial ESI." *See* 6/27/2018 email to DOJ (Att. 2).  The United States proposed an exchange of search terms, and, on August 13,

---

[4] In August 2018, in response to the United States' offer to exchange this information, the parties discussed DI's then-intent to use predictive coding, a well-established form of Technology Assisted Review, rather than search terms, to complete its productions, and the United States then changed its position and stated that it would not provide its search terms to DI because DI had no search terms to exchange with the United States.  Since that time, DI decided to use search terms to complete its productions.  On September 6, 2018, the parties discussed whether DI's decision to use search terms, not predictive coding, changed the United States' position that it would not provide its search terms to DI, and the United States advised that its position remained the same.

[5] To date, the United States has produced only a very small fraction of the State Department relevant emails.  DI expects that internal State Department emails will be relevant to several of the core issues in this case, including the conduct and decisions of the State Department personnel who reviewed and approved the Corporate Bank pricing the Government now challenges in this FCA action.  Without reviewing the United States' search terms, DI will have no way to determine whether the scope of the Government's ESI collections and productions was adequate to address DI's document requests.

2018, DynCorp informed the United States on a telephone call that it did not have search terms to exchange because it had been using predictive coding to search for documents. DynCorp explained that, not only could it not provide the United States with the "seed documents" that it allegedly used to initiate its predictive coding search process, but it could not pinpoint the date on which the search process began, when it would be complete, or the volume of documents that were generated from the search. These revelations ran counter to DynCorp's previous representations that its discovery and document production efforts were nearly complete.

On August 29, 2018, DynCorp informed the United States that it had reversed its decision to use predictive coding and had decided to employ search terms. (Att. 3, August 29, 2018 email). When questioned during a call on September 6, 2018, DynCorp explained that it had been collecting electronic data from its custodians until approximately June 2018, and that it still has to search the documents to determine if they are responsive to the United States' document requests. In an effort to compromise and to reach a resolution of DynCorp's motion to compel, on September 6, 2018, the United States again offered to exchange search terms with DynCorp on the condition and understanding that *neither party* would use any perceived inadequacies in the search terms to pursue a motion to compel. DynCorp refused this offer.

Furthermore, when pressed, DynCorp admitted that its <u>only</u> purpose in seeking the United States' search terms is to question the adequacy of the government's efforts to search for electronic data – efforts that began approximately a year ago. This purpose is neither warranted nor necessary, particularly now that the United States' document productions are nearly complete. It would be paradoxical to hold the United States accountable to a process that both parties ignored in real time and which DynCorp entirely and unilaterally abandoned without notice to the United States.

As noted, the United States is nearly finished with its document production, entailing searches of seven different agencies (including the State Department)—a process that has involved contacting and interfacing (numerous times) with over 70 people in those agencies. Moreover, the State Department, which began searching its own documents promptly upon receiving DynCorp's document requests last year, has retrieved and produced over 30,000 pages of documents, with more to be produced within the next few weeks.  The United States has produced thousands of State Department emails, both in hard copy and electronic copy, contrary to DynCorp's representation in footnote 5, *supra*, that the United States has "produced only a very small fraction of the State Department relevant emails."  The production effort has been extremely diligent and thorough, particularly considering that the CIVPOL contract at issue in this case was signed more than 14 years ago.

Providing the search terms that the United States used during this process solely to allow DynCorp to criticize the government's efforts at this late date will not assist in the timely resolution of this lawsuit.  It would be a burden to the agency and cause unnecessary delay to go back and re-run search terms at this point.  The United States objects to the manner in which DynCorp has withheld information about its own document production, but nonetheless repeats its offer to exchange search terms with DynCorp for whatever information the parties might glean from those searches, short of encouraging further wild goose chases and additional hindrance to the discovery process.

**Post Negotiation Memoranda**

*DI's Position:*

The United States produced redacted versions of several State Department Post Negotiation Memoranda.  These documents appear to detail the State Department's rationales for

accepting or rejecting DI charges on the CIVPOL Task Orders at issue in this case following DCAA audits and/or ratification or definitization proposals by DI. Though these documents are almost entirely redacted, the memoranda go to the heart of the issues in this case – that is, they address how the State Department viewed DI's charges on the applicable Task orders, (which included Corporate Bank charges) and its decision-making process in determining whether to accept or reject those charges. Thus, these documents address issues of materiality, as well as price-reasonableness.

      DI requested that the United States explain the basis for its redactions to these documents by email dated August 29, 2018. The United States advised that it was asserting the deliberative process privilege with regard to these documents. DI contends that they should be produced unredacted (in particular, if the Government wants to argue that the Court should ignore actual market data demonstrating the reasonableness of DI's pricing based on internal DI documents (which the Government takes out of context), the Government should not hide behind an asserted privilege its own internal documents that we expect will undermine the Government's position.) If the parties are unable to resolve this matter, DI anticipates that the Magistrate Judge will need to address this issue.

***The United States' Position:***

      The United States intends to assert both deliberative process and attorney-client privilege regarding the redacted information contained in the four documents that DynCorp has identified to the United States. Although we can attempt to further refine redactions of the information we believe is privileged, contrary to DynCorp's speculation, the documents at issue do not go to the heart of the issues in this case. DynCorp should know better than to assert otherwise, as the documents relate to its own settlements of costs questioned by the Defense Contract Audit

Agency ("DCAA") in a series of audits. DynCorp and the State Department have exchanged letters and demands relating to these settlements since 2011 and the State Department signed the memoranda at issue in 2017.

In an effort to resolve this dispute, the United States will revisit the redactions and assert any applicable privilege(s) on a privilege log, which, as DynCorp notes, the parties have not yet prepared or exchanged.

*DI's Position:*

The United States made available for DI's review 13 additional boxes of State Department documents on September 4, 2018, and advises that there are (3) three more boxes of documents that will be made available for inspection and copying at some point in the future. Therefore, DI anticipates that its request for a date certain for the provision of these documents will soon be rendered moot.

The parties conferred regarding the United States' production of work papers associated with DCAA audits. The United States advised that, on September 5, 2018, it produced the work papers DI requested in connection with DCAA audit reports that the United States previously produced, as well as those associated with the additional DCAA audit reports that DI identified in its Motion to Compel. DI will advise the United States if it has any further concerns relating to these documents upon its review of this production.

The parties also conferred about the United States' collection of documents pertaining to Blackwater Security Consulting, LLC's Worldwide Personal Protective Services contract in Iraq and Kellogg Brown & Root, Inc.'s LOGCAP III contract in order to better understand the process the Government used to identify responsive documents. DI will review these

productions once it receives them and will advise the United States of any concerns it has relating to these documents.

As for the remaining issues set forth in DI's Motion to Compel, DI will review the Government's productions when it receives them and will assess whether the Government's productions render moot any of the requests set forth in its Motion to Compel, or portions thereof.

***The United States' Position:***

As clarified above, the United States is searching for the three boxes of documents described above, and will notify DynCorp if the documents can be located.

In all other respects, the United States has acted diligently to resolve the specific demands made by DynCorp in its Motion to Compel. In sum:

(1) The United States' Initial Disclosures identify State Department employees, and this list includes current employees whose electronic files were searched. Moreover, the United States will agree to exchange search terms with DynCorp.

(2) The United States anticipates that its production of responsive State Department ESI will be complete on or before October 22, 2018.

(3) The United States has made hard copy boxes of potentially responsive State Department documents available to DynCorp for review, save for three boxes that, if they can be found, will be made available to DynCorp for review on or before October 22, 2018.

(4) Documents related to Blackwater Security Consulting, LLC's Worldwide Personal Protective Services contract, as described in the United States' Opposition to the Motion to Compel, were produced to DynCorp.

(5) Documents pertaining to seven non-State Department contracts have been produced, or will be produced to DynCorp on or before October 22, 2018, per the United States' Opposition to the Motion to Compel. An eighth non-State Department contract, demanded for the first time in the Motion to Compel, will not be produced.

(6) The United States has produced the unissued DCAA report and work papers.

(7) The United States has produced work papers for previously produced DCAA audit reports.

(8) The United States has produced additional unclassified DCAA audit reports and work papers identified by DynCorp in its Motion to Compel.

Dated:  September 10, 2018

Respectfully submitted,

/s/ *Jennifer A. Short*
Jennifer A. Short (Bar No. 456884)
Assistant United States Attorney
555 Fourth Street, NW
Washington, D.C. 20530
Tel: (202) 252-2529
Fax: (202) 252-2599


/s/ *Elizabeth Rinaldo*
Elizabeth Rinaldo
Benjamin Young
Attorneys
United States Department of Justice
Civil Division
Ben Franklin Station
PO Box 261
Washington, D.C. 20044
Tel: (202) 616-0291
Fax: (202) 514-7361

*Counsel for the United States of America*

/s/ *David M. Nadler*
David M. Nadler (Bar No. 402705)
Steven J. Roman (Bar No. 392959)
BLANK ROME LLP
1825 Eye Street, NW
Washington, D.C. 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201
DNadler@BlankRome.com

*Counsel for DynCorp International LLC*